BRIAN A. PATTERSON,

                            Plaintiff,

        v.                                                Case No. 24-cv-939-pp

CANDACE WHITMAN, *et al.*,

                            Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (DKT. NO. 4), DENYING PLAINTIFF'S MOTION TO CONSOLIDATE FEES AND COSTS (DKT. NO. 13) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Brian A. Patterson, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided inadequate dental care and retaliated against him. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2; for injunctive relief, dkt. no. 4; and to consolidate fees and costs, dkt. no. 13; and screens his complaint, dkt. no. 1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 29, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $86.30. Dkt. No. 6. The court received that fee on September 23, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names as defendants Health Services Unit (HSU) Manager Candace Whitman, Nurse Practitioner Terry Kizer, Dental Coordinator Angelo Panos and Acting Security Director Nicholas Sanchez. Dkt. No. 1 at ¶¶4–7. The complaint sues all defendants in their individual and official capacities. Id.

The plaintiff alleges that in 2015 or 2016, while he was at Waupun Correctional Institution, he requested and received an emergency tooth

extraction. Id. at ¶9. He told the dentist about pain in another tooth, and the dentist said the plaintiff had a cavity that needed to be filled. Id. The dentist did not fill the cavity and told the plaintiff that he would need to submit another request for dental treatment. Id. The plaintiff filed that request, but in 2018 he was transferred to Fox Lake before having the filling. Id. at ¶¶10–11.

On around October 30, 2022, the plaintiff submitted a request for dental treatment at Fox Lake to have his cavity filled. Id. at ¶12. He says that he "was informed that he would be placed on the waiting list that may take up to a year." Id. The plaintiff notes that Fox Lake does not have an onsite dentist. Id. at ¶13. On April 30, 2024, the plaintiff asked Sergeant Jason Paulus (not a defendant) for a dental service request slip. Id. at ¶14. Paulus told the plaintiff to fill out and file a medical request slip as the HSU had instructed unit sergeants to do. Id. The same day, the plaintiff submitted a medical slip requesting dental treatment to fill his cavity. Id. at ¶15. He noted that his "pain and discomfort had grown progressively worse." Id. The plaintiff says that the HSU typically processes medical requests within one day, but that he never received a copy of his request noting that it had been received. Id. at ¶¶16–17.

On May 3, 2024, the plaintiff submitted another medical request form about his cavity. Id. at ¶18. The next day, Kizer processed his request but noted only that "Dental slips are yellow," compared to the blue medical slip that the plaintiff had submitted. Id. at ¶19. The plaintiff says Kizer did not refer his request to a dentist for evaluation or treatment. Id. On May 6, 2024, he filed an internal complaint "based on the long wait for dental service" after

Kizer "disregarded [his] request." Id. at ¶20. Two days later, the plaintiff showed Kizer's response to Paulus, and Paulus told the plaintiff to file another medical request because there were no dental request slips available. Id. at ¶21. The plaintiff says that on May 9, 2024, he received another copy of Kizer's previous response to his first medical request slip. Id. at ¶22. But "she crossed out her dismissive remark" and wrote that he was on the essential waiting list. Id. She also again advised him to submit a yellow dental request form in the future. Id. The same day, Paulus told the plaintiff he had asked a nurse for more dental request slips on the unit. Id. at ¶23.

Also on May 9, 2024, the plaintiff submitted another medical request slip as Paulus had suggested, noting that there were no dental request slips on his unit and that he remained in pain from his cavity. Id. at ¶24. Kizer processed the request the next day, marked a box to designate the request as "other" and wrote "Dental" next to the checked box. Id. at ¶25.

The plaintiff alleges that on May 15, 2024, Kizer sent him another copy of his May 9, 2024 request "and retaliated against him for filing a complaint and threatened him by offering him a Hobson's choice of permanently losing his tooth and exposure to additional, worse pain." Id. at ¶26. Kizer's note informed the plaintiff that the wait for dental treatment was long at Fox Lake because "there is no regular dentist." Id. She told him that if his "pain is severe, request extraction, will get you in sooner for that. Otherwise fills are only done in the order you were put on the list." Id. He asserts that Kizer "knew or should have known that telling [the plaintiff] that he would be treated sooner if he elected to

have his tooth removed would discourage [him] from seeking additional treatment and also from filing additional complaints." Id. at ¶27. He also insists that Kizer should have known that the plaintiff wanted to save his tooth rather than elect to have it extracted. Id. at ¶28.

On May 17, 2024, the plaintiff submitted a medical request form directed to HSU Manager Whitman asking her to schedule him for an outside dental appointment at his own expense to fill his cavity. Id. at ¶29. Whitman denied his request about a week later, saying that no escort officers were available and that his appointment would occur sooner than officers would be available. Id. at ¶30. The plaintiff says this was a "pretense," and he believes Fox Lake staff "routinely escort other inmates on medical and dental trips on a daily basis." Id. at ¶31. He provides one example of another incarcerated person who "has been escorted on several occasions to outside dental appointments to fill cavities" after that person commenced litigation. Id. at ¶31.

On May 31, 2024, the plaintiff wrote to Panos asking him to schedule an outside dental appointment after Whitman "falsely claimed" that no escort officers were available. Id. at ¶32. The plaintiff says that he sent a letter to Sanchez "to request that officer be made available" to take him to an outside dental appointment. Id. at ¶33. He says he cc'd Sanchez on his request to Panos and cc'd Panos on his letter to Sanchez. Id. at ¶32–33.

On June 7, 2024, the plaintiff had a morning HSU appointment. Id. at ¶34. He says that when he arrived, he told staff he had flu-like symptoms, including chills, fever and body aches, and he requested that the appointment

be rescheduled. Id. Staff told the plaintiff to submit another request form so he would not lose his place on the wait list. Id. The plaintiff says he believed the maximum wait time for asymptomatic dental care is forty weeks. Id. at ¶35 (citing DAI Policy 500.40.21). He says that based on that policy, he should have been seen for his cavity by July 31, 2023. Id. at ¶36. He asserts that Panos, Whitman and Sanchez had "the ability, authority, and means to schedule [him] to be evaluated and treated by an outside dental service provider to fill his cavity." Id. at ¶37. Yet he still has not been evaluated for dental treatment. Id. at ¶38. He alleges that "[a]ll Defendants" knew about the delay in his treatment, yet he still has not received treatment for his cavity. Id. at ¶¶39–40.

The plaintiff says he filed an institutional complaint about his wait and Kizer's response, and a complaint examiner recommended affirming it to acknowledge that the plaintiff did not receive dental treatment by July 31, 2023. Id. at ¶¶41–43. He says Panos "also affirmed" his complaint and noted that Fox Lake "does not have a dentist . . . staff coming when available." Id. at ¶44. He says he also filed two complaints against Whitman for retaliation against him and denying him care by lying about escort officers being available. Id. at ¶¶45, 50. He claims her retaliation "is ongoing as a direct result of several other complaints and litigation that [he] has filed against Defendant Whitman." Id. (citing Case No. 24-cv-585).

The plaintiff filed another complaint against Kizer for her alleged retaliation by telling the plaintiff that the dental office could sooner treat an extraction. Id. at ¶46. He filed two additional complaints about staffing

shortages causing his delayed care. Id. at ¶¶47–51. He says the complaint examiner's office rejected his additional complaints, asserting that it had "previously addressed" those issues. Id. at ¶¶56–61.

The plaintiff seeks to proceed on a claim that all defendants were deliberately indifferent to his dental needs. Id. at ¶¶63–68. He also seeks to proceed on a state law claim of negligence related to his dental care. Id. at ¶¶69–73. He seeks to proceed against Kizer and Whitman for retaliating against him for filing his institutional complaints and previous lawsuit. Id. at ¶¶74–79. Finally, he seeks to proceed on a claim that Whitman, Panos and Sanchez failed to intervene and order appropriate dental care despite being aware of his extended delay in receiving care. Id. at ¶¶80–84.

The plaintiff seeks declaratory judgment, injunctive relief ordering Whitman and Sanchez to arrange for an outside dental appointment for the plaintiff and preventing them "from further delaying and otherwise obstructing [the plaintiff from] receiving reasonably adequate dental care" and unspecified damages. Id. at p.14–15.

C.    Analysis

The court reviews claims regarding the denial of medical care (including dental care) under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an

objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an incarcerated person's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776.

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). How long of a delay is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640).

The plaintiff alleges that he has not received dental care to treat an increasingly painful cavity that has persisted for eight years. He says he began requesting care for his cavity at Fox Lake in October 2022, and he has filed several requests for treatment since. But he still has not received treatment, and he alleges that this delay has exacerbated his pain and symptoms. The court finds these allegations sufficient to satisfy both components of an Eighth Amendment claim. See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (citing Board v. Farnham, 394 F.3d 469, 480–81 & n.4, 482–83 (7th Cir. 2005);

and Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000)) (noting that tooth cavity and decay "can constitute an objectively serious medical condition because of pain and the risk of infection").

The plaintiff may proceed on this Eighth Amendment claim against Kizer, whom the plaintiff alleges knew about his repeated requests for treatment and did not act appropriately. He says Kizer did not refer his requests to a dentist, but he also alleges that Fox Lake has no dentist on staff. Still, the complaint alleges that Kizer could have taken other action to ensure that the plaintiff received timely dental treatment but failed to do so. The plaintiff also may proceed against Whitman, to whom he reached out through medical requests and who allegedly knew about the delay but did not take action to allow him to be seen sooner for dental treatment.

The plaintiff may not proceed on this claim against Panos or Sanchez. He alleges only that he sent these defendants a letter asking them to schedule him for an outside dental appointment in May 2024. He does not allege that either was aware before then of his delay in receiving treatment, nor does he allege that he told them about the delay or that they were responsible for the delay. Nor may he proceed against Panos or Sanchez based on their administrative positions at Fox Lake. Prison officials in chief administrative positions, like Panos as dental coordinator and Sanchez as security director, "are ordinarily not personally liable for decisions made by subordinates, even if they receive a letter complaining about those decisions and do not intervene." Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks v. Raemisch, 555

F.3d 592, 595–96 (7th Cir. 2009)). The plaintiff's single allegation that "all defendants" were aware of the delay is not sufficient. See Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (affirming that "vague phrasing" in complaint that "'one or more of the Defendants' had engaged in certain acts or deprived [plaintiff] of his constitutional rights . . . does not adequately connect specific defendants to illegal acts"). Because the plaintiff has not alleged that Panos or Sanchez were aware of or responsible for the delay in his dental care, he cannot proceed on an Eighth Amendment claim against them for the delay.

The same goes for the plaintiff's claim that Whitman, Panos and Sanchez failed to intervene and order appropriate dental care despite being aware of his extended delay in receiving care. He may proceed on this claim against Whitman because he alleges that he repeatedly informed her about the delay, yet she failed to take reasonable action. But he may not proceed against Panos or Sanchez because he does not allege that either of those defendants were aware of the delay and failed to act accordingly. As the court has explained, the plaintiff does not allege that he told these defendants in his letter about the delay or asked them to remedy that. Panos and Sanchez cannot be held responsible for not remedying a situation that they did not know existed. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Burks, 555 F.3d at 595.

The plaintiff also seeks to proceed on a claim under state law that all defendants were negligent regarding his medical issue. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to

claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Negligence does not violate the Constitution. See Estelle, 429 U.S. at 106 (1976); Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). But the plaintiff may raise this claim under state law. Because the facts underlining the plaintiff's claim of negligence are the same as those underlining his Eighth Amendment claim, the court will exercise supplemental jurisdiction over the plaintiff's state law claim. He may proceed on this claim against Kizer and Whitman only.

The plaintiff alleges that Kizer retaliated against him for filing complaints about the delay in receiving dental care by telling him that he could request an extraction to be seen sooner. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The plaintiff has not stated a First Amendment claim of retaliation against Kizer. He alleges that he engaged in protected activity by filing a complaint about Kizer's response to his request for medical services. See Daugherty, 906 F.3d at 610. But he has not alleged that he suffered any deprivation. He alleges that in response to his requests and complaint, Kizer

told him that the wait for dental treatment was long at Fox Lake because the prison has no regular dentist, but that he could be seen more quickly for an extraction. That response did not deprive the plaintiff of his rights—it gave him information about the delay. The plaintiff says Kizer should have known that this response would discourage him from continuing to seek treatment for his cavity because he wanted to save his tooth. But the plaintiff alleges no facts suggesting Kizer knew or should have known what the plaintiff wanted beyond his requests for treatment. It would have been reasonable for Kizer to assume that the plaintiff wanted the earliest possible treatment for his dental concern, even if that meant seeking extraction of his tooth. That Kizer provided the plaintiff an alternative to waiting for dental treatment did not deprive the plaintiff of any right and does not form the basis of a claim of retaliation.

The plaintiff also seeks to proceed on a First Amendment claim of retaliation against Whitman. He alleges that Whitman retaliated when she allegedly lied about escort officers being available to take him to an outside dental appointment in response to his requests to and complaints about her and a previous lawsuit he filed against her. The plaintiff's previous complaints and lawsuit are protected conduct. See Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (lawsuit); Daugherty, 906 F.3d at 610 (grievances). He alleges that Whitman knew about his past complaints and lawsuit when she falsely told him that no escort officers were available. And the court finds that being provided this false information would likely deter an incarcerated person from continuing to seek outside medical treatment. Accepting the allegations in

the complaint as true for purposes of this decision, the court will allow the plaintiff to proceed on a First Amendment claim of retaliation against Whitman.

Finally, the plaintiff seeks to proceed against the defendants in their official capacities. Claims against an official in his official capacity represent another way to plead an action against the entity that he represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claims against the defendants as having been brought against the Wisconsin Department of Corrections, the agency for which they work. Id. at 165–66. And because claims against the Department of Corrections are "no different from a suit against the State itself," the court further construes these claims as if brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

The plaintiff has not alleged that he was denied timely dental care because of a policy or custom of the State of Wisconsin. He instead alleges that the delay in dental care *violated* institutional policy regarding dental care for incarcerated persons, and he says a complaint examiner affirmed his institutional complaint based on that violation. The plaintiff provides no basis to hold the State of Wisconsin liable for the actions of its employees. The court will dismiss the plaintiff's claims against the defendants in their official capacities.

To summarize, the plaintiff may proceed on the following claims: 1) an Eighth Amendment claim against Kizer and Whitman for delaying his dental

care; 2) an Eighth Amendment claim that Whitman failed to intervene and provide the plaintiff timely dental care; 3) a First Amendment claim of retaliation against Whitman for allegedly lying about escort officers being available to take him to an outside dental appointment; 4) a state law claim of negligence against Kizer and Whitman. The court will dismiss all other claims and defendants.

### III. Motion for Injunctive Relief (Dkt. No. 4)

On July 25, 2024, the court received the plaintiff's motion for injunctive relief. Dkt. No. 4. The plaintiff reiterates the facts alleged in his complaint and asserts that the defendants "retaliated" against him as described in his complaint. Id. at 2. He claims he is threatened with irreparable harm and faces loss of his tooth, "embarrassment, and potential damage and injury to his cardiovascular system." Id. at 3–4. He says the balance of hardships weighs in his favor because his "pain and suffering if he permanently loses his tooth is significant," whereas the defendants will merely have to "do[] their job adequately" if the court grants the injunction. Id. at 4–5. He says he is likely to succeed because "[w]hat the Defendants have done and continue to do" violates his Constitutional rights. Id. at 5. Finally, he says the relief will serve the public interest "because it is always in the public's interest for prison officials to obey the law." Id. at 6.

To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without

the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three threshold factors, then the court must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). The balancing analysis "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

The court will deny the plaintiff's motion for injunctive relief because he has not satisfied any of the three threshold criteria. The plaintiff alleges only that it is possible he will lose his tooth and suffer other speculative harm if he does not receive proper dental treatment. He does not say that this has happened or that it certainly will happen if the court denies him injunctive relief. He says nothing about whether an adequate remedy at law exists. He also has not demonstrated that he is likely to succeed on the merits. The plaintiff must show more than "a mere possibility of success" to demonstrate

his entitlement to a preliminary injunction. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762 (7th Cir. 2020). To obtain a preliminary injunction, he must make a "'strong' showing" that he is likely to succeed, which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." Id. at 763.

The plaintiff explains *why* he thinks his claims will succeed, but he does not explain *how* he will prove the key elements of his claims. He says he is "virtually guaranteed to succeed on the merits" because the defendants' alleged actions violated the Constitution. It is true that the complaint alleges facts that could amount to constitutional violations, which is why the court is allowing it to move past screening. But screening is a very low standard. The plaintiff's motion restates his allegations but does not go further and explain *how* he will prove them and succeed on his claims, particularly after the defendants have had an opportunity to respond and dispute the allegations.

Because the plaintiff has not satisfied any of the threshold elements for a preliminary injunction, the court will not weigh or discuss the harm to the parties or the public interest in providing an injunction. See Cassell v. Snyders, 990 F.3d 539, 544–45 (7th Cir. 2021) (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008), abrogated in part on other grounds by Pritzker, 973 F.3d at 762–63). The court will deny his motion.

## IV. Motion to Consolidate Fees and Costs (Dkt. No. 13)

The plaintiff filed this motion in this case and another case he has pending before this court. Dkt. No. 13; Case No. 24-cv-585, Dkt. No. 16. The plaintiff says he is indigent and is making payments on these two cases and a third pending lawsuit in the Western District of Wisconsin. Dkt. No. 13 at 1. He explains that twenty percent of any deposit into his trust account goes to each of these payments, leaving him only forty percent of deposits to purchase commissary food, hygiene products, laundry and phone cards and other items. Id. at 1–2. He asks the court to "order that the filing fees from all three cases be deducted consecutively instead of simultaneously to prevent such further hardships." Id. at ¶7.

The court will deny this motion. The civil case filing fee is $350 for a plaintiff who has been granted leave to proceed without prepaying the filing fee. A plaintiff must pay that amount for each case he files, even if he is indigent. 28 U.S.C. §1915(b)(1). An indigent plaintiff must make payments toward that fee over time in an amount equal to 20% of his preceding month's income credited to his trust account each time the amount in the account exceeds $10. 28 U.S.C. §1915(b)(2). The Supreme Court has held that §1915(b)(2) "calls for 'monthly payments of 20 percent of the preceding month's income' simultaneously for each action pursued." Bruce v. Samuels, 577 U.S. 82, 90 (2016). Those payments may not be made sequentially or consecutively. Id. at 87. The plaintiff is responsible for paying the fees associated with his past and pending lawsuits in accordance with §1915(b)(2). It is simply a fact of litigation

that when a plaintiff files more than one lawsuit, the requirement that he pay fees for each of those lawsuits may interfere with his ability to use his income for other purchases.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for injunctive relief. Dkt. No. 4.

The court **DENIES** the plaintiff's motion to consolidate fees and costs. Dkt. No. 13.

The court **DISMISSES** defendants Angelo Panos and Nicholas Sanchez.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Candace Whitman and Terry Kizer. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$263.70** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number.

19

If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 6th day of November, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**